MARGARET GARR *et al.*, Defendants in Error, v. JAMES B. HARDING, Plaintiff in Error.

Kansas City Court of Appeals, May 20, 1889.

1. **Administration:** ADMINISTRATOR COLLUDING IN ALLOWANCE OF FRAUDULENT CLAIM. On final settlement, the probate court is justified in disallowing a payment made by an administrator on a false and fraudulent claim theretofore allowed by the court, when it is shown to have been allowed by the collusive practices and actual bad faith of such administrator.

2. ———: COLLATERAL ATTACK OF JUDGMENT. The investigation of such fraudulent and collusive allowance and the disallowance of payment thereon does not constitute a collateral attack on the judgment of allowance. The inquiry only goes to the good or bad faith of the administrator touching the judgment. If this is the product of his bad faith, he cannot be allowed for its payment.

3. Appellate Practice: ERROR IN JUDGMENT. Where there is error in the entry of the judgment, this court may reverse and remand the cause with instruction to enter up a judgment in proper form.

*Error to the Putnam Circuit Court.*—HON. ANDREW ELLISON, Judge.

REVERSED AND REMANDED (*with directions*).

Statement of the case.

Until his death, in May, 1882, one Joseph McCalment resided, with his wife, Mary, and a son, Luther McCalment, on a farm in Putnam county, Missouri. Just before his death, it seems, the old man, Joseph McCalment, conveyed this land to the son, Luther, but shortly after such death, the remaining children, and heirs, by a successful suit in court, had this conveyance set aside.

Thereupon Luther McCalment, and the widow Mary McCalment (who continued to live with Luther), had allowed by the probate court of Putnam county certain claims against the estate of said Joseph McCalment, deceased—to said Luther there was allowed $1,130.69, and to the widow Mary, eight hundred and forty-five dollars.

These plaintiffs (so designated in this suit), Mrs. Garr, and others, compose the other legal heirs of said Joseph McCalment. The defendant (so-called in the style of this action), Jas. B. Harding, was, all the time of the settling the affairs of the estate, administrator, and continues so to be.

When the claims of Luther McCalment and his mother, Mary, were presented and allowed in the probate

court, it is claimed by these plaintiffs, that by collusion between said claimants and the administrator Harding, they were denied the opportunity to contest such claims. However, they were appealed to the circuit court, but there the appeals were dismissed by the administrator, without any hearing, and contrary to the expressed desire of such contesting heirs.

Immediately upon the allowance, Mrs. Mary McCalment, the widow, assigned her claim over to Luther, so that he became owner as well of his mother's allowed claim of eight hundred and forty-five dollars, and his own of $1,130.69. It seems the farm lands belonging to the estate were then sold, under order of court to pay debts, and of the proceeds, Harding, the administrator, paid over to Luther McCalment, seven hundred and five dollars—on the claim of Mary McCalment of eight hundred and forty-five dollars, which had been assigned by her to Luther.

At the November term, 1885, of the Putnam probate court the administrator Harding presented his final settlement, and therein claimed credit for seven hundred and five dollars paid to Luther McCalment, on account of the eight hundred and forty-five-dollar claim allowed Mary McCalment, and by her assigned to said Luther. These plaintiffs, being all the other heirs of said estate, duly filed their exceptions to the allowance of said final account, charging fraudulent collusion between Harding the administrator, and said Luther and Mary McCalment to impose illegal and fraudulent claims upon the said estate. At the hearing had in the probate court the exceptions were overruled and the settlement approved. The matter was then appealed to the circuit court, and there, upon a trial had, the court found against the administrator, as to said item of seven hundred and five dollars, paid on account of the eight hundred and forty-five-dollar claim, but the record entry adjudges eight hundred and forty-five dollars as against the defendant Harding.

The administrator Harding brings the case here by writ of error.

*A. W. Mullins*, for the plaintiff in error.

(1) The allowance of the demand in favor of Mary McCalment, by the probate court, had the same force and effect as a judgment rendered in the circuit court of this state. 1 R. S. Mo., sec. 102, p. 30; *Smith v. Sims*, 77 Mo. 269, 272; *Sheetz v. Kirtley*, 62 Mo. 417. And such judgment could not, by any proceeding, be set aside or vacated on the ground that Mrs. McCalment had no legal or valid claim against the estate for the money her husband had received from her, but only for fraud in obtaining the allowance. *Sheetz v. Kirtley*, 62 Mo. 417, 420; *Smith v. Sims*, 77 Mo. 269; Freem. Judg., sec. 489. It can readily be inferred from the record in this case, that the ruling in the circuit court was predicated on the theory that the money Joseph McCalment obtained from his wife became, and was, his absolutely by reason of the marital relation. In this the court was in error. *Clark v. Clark*, 86 Mo. 114; *McCoy v. Hyatt*, 80 Mo. 130; *Welch, Adm'r, v. Welch*, 63 Mo. 57; *Botts v. Gooch*, supreme court of Mo. October term, 1888, not yet reported. (2) Probate courts have no equity jurisdiction, and therefore no competent power to vacate or set aside judgments allowing demands against estates after the term at which they are allowed. *Presbyterian Church v. McElhiney*, 61 Mo. 540. And the circuit court on an appeal from a probate court has no other or greater jurisdiction in the matter of the appeal than the probate court. If, therefore, it is sought to impeach a judgment in a case like that under consideration, resort should be had to the circuit court, and there proceed by proper petition in equity, *Jones v. Brinker*, 20 Mo. 87; *State to use v. Roland*, 23 Mo. 95; *Oldham v. Trimble*, 15 Mo. 225. (3) The judgment rendered by the circuit court is irregular and wholly unauthorized by

law.   The proceeding on the appeal was to review the administrator's final settlement, and that being done to certify back to the probate court the record and proceedings of the circuit court.   1 R. S. Mo., secs. 299, 300, p. 44.   But instead of so proceeding the circuit court rendered a general personal judgment against the administrator, in favor of a part of the heirs of the deceased for eight hundred and forty-five dollars.   This was certainly wrong, and such judgment cannot stand. *Ranney, Adm'r, v. Thomas*, 45 Mo. 111; *Finney, Adm'r, v. The State to use*, 9 Mo. 225.

*Huston & Parrish*, for the defendant in error.

(1)   The final settlement is the appointed time for the administrator to settle his stewardship with the heirs.   Before that time they have no voice—cannot be heard.   *Picot v. Biddle*, 35 Mo. 29; *State v. Lankford*, 55 Mo. 564; *Ritchy v. Withers*, 72 Mo. 557; *In re Davis*, 62 Mo. 450.   (2)   When the final settlement is made and approved, then it becomes a final judgment between the administrator and the heirs, and all matters of defense to credits claimed and allowed in that settlement are cut off in that or any other court—the heirs have then had their day in court.   (3)   In wrong doing all are principals, and the final settlement is the first time the heirs had the opportunity to be heard on this matter.   All done previously was *ex parte* as to them, (4)   This is not a proceeding to set aside an allowance; it in no way affects the allowance; it is simply an invocation of the doctrine of estoppel.   If the administrator fraudulently colluded to procure the allowance he ought not to have credit for it.   *Dullard v. Hardy*, 47 Mo. 404.   This case settles the controversy here in favor of the defendants in error.   It is directly in point.   (5)   If the final settlement is made, then all fraud on the part of the administrator antecedent to the final settlement, and not immediately connected with such settlement, is

gone and settled so far as recourse on him is concerned. The only remedy then remaining would be against the fraudulent claimant. The final settlement would white-wash the administrator. *Sheetz v. Kirtley*, 62 Mo. 417, and cases there cited ; *Miller v. Major*, 67 Mo. 247. If the doctrine contended for by plaintiff in error is correct, then the administrator goes free and the heirs are com-pelled to sit still when cited in at a final settlement,— see a claim for credit on account of a fraudulent and collusive allowance admitted, and are powerless to pre-vent it. (6) The case of *Sheetz v. Kirtley*, cited by plaintiff in error, is not in point. That was a final set-tlement, which was invoked. *Smith v. Simms*, also cited, is not in point. When the administrator asks credit on account of an allowance, he has assisted in pro-curing in fraud of the estate, then, upon his fraud appear-ing, he is estopped from obtaining credit, though the allowance is not acted upon at all. He is entitled to a credit for allowances paid by him, unless such allow-ances have been fraudulently obtained by his collusion and fraud. (7) The court did not err in rendering judg-ment against the administrator personally. Judgment "*de bonis testatoris*" is only proper where the adminis-trator is sued by a creditor of the estate. Here he has wasted the estate and has no funds. It is that very matter we complain of, hence judgment goes and must go against him personally, and this judgment, which is equivalent to a disallowance of the fraudulent claims of credit *pro tanto*, should be certified back to the probate court. But, in any event, that matter would only be cause to modify the judgment. It would not be ground for reversal. *Seymour v. Seymour*, 67 Mo. 303. (8) Upon the whole record the judgment is for the right party ; a most infa-mous conspiracy has met with a just rebuke, and a fraud has been successfully throttled.

GILL, J.—Although the record entry of judgment in the circuit court is awkwardly framed, it was clearly the intention of that court to disallow the amount claimed as paid on the claim of eight hundred and forty-five dollars. And we shall assume that such claim was rejected for the reasons presented by the exceptant heirs (these plaintiffs), to-wit : That it was an unjust, illegal and fraudulent claim charged upon the estate by and through the bad faith and fraudulent collusion of the administrator. There is in fact but one material point here for our consideration, since the testimony, as brought up in this record, well sustains the facts, as above found by the trial judge. The question is this : Is the court, having charge of the settlement of estates of deceased persons, justified in disallowing a payment made by an administrator on a false and fraudulent claim theretofore allowed by the probate court, when it is shown to have been there allowed by the collusive practices and active bad faith of such administrator ? To the credit of those administering estates, it can be said that the books are almost barren of exact precedents. But to the credit of the law, be it said, however, that in the two cases cited (and all that industrious and skilful counsel have been able to cite), which present this question, the courts have answered our *quære* in the affirmative.

In *Dullard, Adm'r, v. Hardy, Adm'r*, 47 Mo. 403, is reported a case, the one feature of which is quite parallel, in principle, to the point here. The administrator, knowingly, and fraudulently, permitted, without objection, an insolvent claimant to prove up a claim of two hundred and fifty dollars against the estate, when, as he knew, there was a valid set-off of two hundred dollars, and the estate therefore only owed the claimant fifty dollars instead of two hundred and fifty dollars. However, the administrator concealed this knowledge, permitted the fraudulent judgment for two hundred and fifty dollars, and, having paid the same, asked an allowance in his accounts.

The item was disallowed by the probate court for another reason, but the supreme court held that it may have been rejected for the reason that the administrator thus fraudulently consented to the unjust allowance. In answer to the suggestion that such judgment of allowance could not thus be collaterally attacked, among other things, the court in case *supra* said: "If the payment was made corruptly, and with a view to hamper, embarrass and defraud the estate in respect to the set-off, I do not think, under the circumstances already adverted to, that the *judgment* can be successfully invoked in justification of the fraud." It was there said too: "That the judgment of allowance and classification is not assailed, although the evidence shows that it ought never to have been rendered." So here the judgment will stand, and yet this unfaithful trustee will not be permitted to get credit for paying what he knew to be an unjust charge, imposed on the estate by means of his own fraudulent practices.

A like opinion, in a similar case, was held in a late case in New Jersey. *Hurlburt v. Hutton*, 15 At. Rep., p. 417. Says the court: "There can be no objection to an inquiry as to the good faith of the executors of the estate of Mr. Hutton touching this judgment. If it was the product of bad faith, on their part, they cannot be allowed for its payment. This is not an inquiry as to the validity of the judgment, etc. * * * If the judgment was not the product of their bad faith to the estate, they should have the desired credit, but if it was concocted by them, or with their assent, for the purpose of charging the estate unduly, they should not be allowed the credit they ask."

Following then the spirit of these adjudications, we cheerfully approve the finding and holding of the circuit court. But, owing to the erroneous entry of its judgment we shall reverse and remand the cause with instructions to that court, to enter up a judgment in proper form, disallowing and disapproving the final

settlement of Harding, the administrator, in so far as the credit of seven hundred and five dollars is concerned, and to certify such ruling and judgment to the probate court of Putnam county. The other judges concur.